FORE RIVER SHIPBUILDING CORPORATION *vs.* COMMON-
WEALTH.

Suffolk. November 16, 1923. — February 28, 1924.

Present: RUGG, C.J., DECOURCY, CROSBY, & CARROLL, JJ.

*Tax,* Excise on domestic corporation. *Agency,* Taxation of principal with relation to contract performed by agent.

A domestic corporation, which formerly had been engaged in this Commonwealth in the manufacture of ships, has not ceased " the carrying on or doing of business " in this Commonwealth, as those words are used in G. L. c. 63, § 32, by reason of the facts that it has leased its real estate and plant to a foreign corporation for a term of years and has conveyed to it all its remaining assets, excepting only " certain contracts with the United States Government which were not assignable," if it appears that the domestic corporation made a contract in writing with the foreign corporation under which that corporation was em-

ployed, constituted and appointed the agent for the domestic corporation to perform and complete the contracts with the United States Government " but not in any way as the assignee thereof or of any interest therein," that the foreign corporation was engaged in thus performing the contract and that payments thereunder were made to the domestic corporation, the business of the performance of the contract being that of the domestic corporation performed by its agent and being " the carrying on or doing of business " within this Commonwealth under the terms of the statute.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on September 13, 1921, and afterwards amended, to recover the amount of an excise tax assessed upon the plaintiff for the year 1920.

The suit was heard by *Pierce*, J. Facts found by him are described in the opinion. He ruled that the petitioner was entitled to recover, and, at the request of the respondent, reported the action for determination by the full court.

*A. Lincoln*, Assistant Attorney General, for the Commonwealth.

*F. B. Greenhalge*, for the petitioner.

RUGG, C.J. This is a petition under G. L. c. 63, §§ 77, 78, to recover a corporation excise tax assessed under St. 1919, c. 355, Part I, § 2, as amended by St. 1920, c. 549, § 1, now G. L. c. 63, § 32, and alleged to have been exacted illegally. The question is, whether the petitioner was at the time carrying on or doing business within the meaning of the words of the statute, which provided, with exceptions not here material, that " every domestic business corporation shall be subject to pay annually, with respect to the carrying on or doing of business " an excise tax to be computed as set forth in the act. The relevant facts are that the petitioner was organized as a corporation under the laws of this Commonwealth in 1913 for the purpose of building ships and for other kindred and incidental purposes. In 1917 substantially all its stock was owned by a Pennsylvania corporation. To the end that numerous corporations, owned directly or indirectly by that Pennsylvania corporation, might be consolidated into one, a new corporation known as the Bethlehem Shipbuilding Corporation, Ltd., was organized under the laws of Delaware. In November, 1917,

the petitioner leased its real estate and plant at Quincy to the Bethlehem corporation for a term of three years from November, 1917, and sold and conveyed to that corporation all its remaining assets, excepting only (as alleged in the petition) " certain contracts with the United States Government which were not assignable " and a railroad not material to the present case. Under an agreement bearing the same date the petitioner entered into a contract with the Bethlehem corporation, which recited that the former had sold to the latter all its current assets except (1) its corporate franchise, (2) its contracts with a New Jersey corporation for the construction of submarines, (3) its contracts with the United States, (4) its contracts with others, which, or the ships, vessels or boats being constructed pursuant to the terms of which, have been requisitioned by the United States of America, and (5) its claims against the United States of America. The contract then provided that the petitioner employs, constitutes and appoints the Bethlehem corporation as its agent " but not in any way as the assignee thereof or of any interest therein, to perform and complete " its submarine contracts and all its ship contracts. In a schedule forming a part of that contract, thirty-five different craft are specified, and other work in connection with submarines and destroyers. The Bethlehem corporation agreed to complete the contracts as required by their terms, and the petitioner agreed to pay to the Bethlehem corporation all moneys as and when received by it on such contracts. Other provisions of the agency agreement need not be re-cited. All the remaining property of the petitioner, including the real estate and property previously leased to the Bethlehem corporation, but excepting said contracts, was conveyed to the Bethlehem corporation by deed executed late in 1920 but dated December 31, 1918. It has been found that from and after November, 1917, it was the purpose and endeavor of the petitioner to cease from doing any business whatsoever, and within the meaning of the governing statute it did no business during the period for which the excise is assessed unless the carrying out of its nonassignable contracts with the government of the United States by the

Bethlehem corporation pursuant to the agency contract is the doing of business.

The governing statute imposes an excise only upon corporations which are carrying on or doing business. Mere possession of the franchise to be a corporation is not made subject to this tax. In this respect the present law differs from some earlier statutes. Compare *Attorney General* v. *Massachusetts Pipe Line Gas Co.* 179 Mass. 15, 19. It is the carrying on and doing of business alone upon which is levied the present excise. It may be assumed that, when a corporation has leased all its property and assets and does nothing more than to receive and distribute the rental among its stockholders, it is not carrying on or doing business. *Attorney General* v. *Boston & Albany Railroad,* 233 Mass. 460. *McCoach* v. *Minehill & Schuylkill Haven Railroad,* 228 U. S. 295. *United States* v. *Emery, Bird, Thayer Realty Co.* 237 U. S. 28. *Von Baumbach* v. *Sargent Land Co.* 242 U. S. 503. The petitioner was doing much more. It was the principal in its contracts with the government of the United States. The United States of America recognized it and it alone as under obligation to complete government contracts to which it was a party. In order to secure continuity of liability of the petitioner from the beginning to the completion of all such contracts, the government provided that the petitioner could in no way assign such contracts. See U. S. Rev. Sts. § 3737. Doubtless performance of these contracts by an agent was permissible. *Hardaway* v. *National Surety Co.* 211 U. S. 552. All payments under the contracts were due and were made to the petitioner alone. This is acknowledged and provided for in the agency contract by the petitioner with the Bethlehem corporation. Performance of the contracts as between the petitioner and the government was the business of the petitioner. A contract of agency with respect to business imports from its essential nature the business of the principal. Any other conception involves a contradiction of terms. Whatever one does by another, he does by himself so far as concerns legal responsibility. That thought is expressed in the Latin, *Qui facit per alium, facit per se.* It is an underlying maxim

of the law of agency and is of almost universal application. It extends even into the criminal law. *Commonwealth* v. *White*, 123 Mass. 430, 434. The circumstance that the mechanical and physical execution of the contracts was done by the Bethlehem corporation under the agency agreement is in this connection of slight consequence. The contracts still were the contracts of the petitioner. The act of the agent was the act of the principal. A foreign corporation may be treated as doing business within this Commonwealth when all its activities are conducted solely by an agent holding no corporate office. *Reynolds* v. *Missouri, Kansas & Texas Railway*, 224 Mass. 379, affirmed in *Missouri, Kansas & Texas Railway* v. *Reynolds*, 255 U. S. 565. There would be a palpable inconsistency in treating the petitioner with respect to the United States of America as the single person responsible for the execution of these contracts without power of assignment and in holding at the same time that the actual performance of those contracts was not its business because done by the hand of its agent. The factor that it was the intent and design of the petitioner to do no new business is not decisive. It is none the less carrying on or doing of business to complete contracts in hand but unfinished with the purpose of doing no more business. Intent and design are in many connections of great significance. But they cannot prevail in the face of decisive conduct of an opposite character. Performance of live contracts, the obligation of which is to build ships by the instrumentality of an agent, is conduct of unmistakable meaning. It is the doing of business. It overcomes the most solemn asseverations of an intent and design to do no business.

It follows as an irresistible result of the facts of this case that the petitioner in causing the performance of these contracts for shipbuilding made by it with the United States through the Bethlehem corporation as its agent was " carrying on or doing of business."

*Petition dismissed with costs.*