TROJAN ENGINEERING CORPORATION *vs.* GREEN MOUNTAIN POWER CORPORATION.

Suffolk.   May 21, 1935. — February 4, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Jurisdiction,* Foreign corporation, Interstate commerce, Forum non conveniens. *Corporation,* Foreign. *Constitutional Law,* Due process of law. *Interstate Commerce.*

A foreign corporation whose finances and business policy, but not its physical plants, were managed in this Commonwealth by its president, treasurer, and other officers, was doing business here within the meaning of G. L. (Ter. Ed.) c. 223, §§ 37, 38, and service here upon its president brought it within the jurisdiction of the Massachusetts courts.

Under G. L. (Ter. Ed.) c. 223, §§ 37, 38, service of process in this Commonwealth upon a foreign corporation doing business here gave its courts jurisdiction of an action by another foreign corporation upon a transitory cause arising elsewhere and not related to the business done here; so construed, the statute did not deny due process of law to the defendant.

In an action against a Vermont corporation whose finances and business policy were managed in this Commonwealth by officers resident here and whose physical business of supplying electricity was mainly carried on in Vermont, though it maintained one transmission line to a small area in New Hampshire, a finding was warranted that maintenance of the action here would not unduly burden its interstate commerce.

The rule *forum non conveniens* did not apply to an action in this Commonwealth between two foreign corporations of different States if it appeared that trial here would be practically as convenient to the parties as would trial at the domicil of the defendant.

CONTRACT. Writ dated September 29, 1933.

The defendant appeared specially and filed an answer in abatement, which was heard and overruled by *Weed,* J. The judge then reported the action.

*P. N. Jones,* for the defendant.

*R. G. Dodge,* (*W. S. Youngman* with him,) for the plaintiff.

RUGG, C.J. This action is to recover a balance alleged to be due on a contract whereby the plaintiff rendered engineering services to the defendant and supplied materials for construction work. The plaintiff is a Delaware corporation with its principal place of business in New York. The defendant is a Vermont corporation. Service was made by trustee process upon two Boston banks, which answered "effects" in small amounts, and upon the defendant by delivering an attested copy of the writ to F. J. Dunn, president of the defendant, at his usual place of business in Boston. The defendant appeared specially for the sole purpose of challenging the jurisdiction of the court on the grounds that it was doing no business within Massachusetts, that the cause of action arose outside the Commonwealth, that the prosecution of the action in this Commonwealth would unduly burden its interstate commerce, and that inconvenience to the parties of a trial in Massachusetts should lead the court to refuse jurisdiction as a discretionary matter. The trial judge overruled the answer, filed detailed findings, ruled upon the parties' requests for findings and rulings, and reported the case to this court.

These further facts appear from the report: The defendant is a Vermont corporation engaged in the generation and distribution of gas and electricity within Vermont; one of its transmission lines supplies electricity in a small area across the New Hampshire boundary. This constitutes an insubstantial part of the business of the defendant, although it is affected with a public interest. The defendant has no tangible property in Massachusetts and has

never engaged in the generation or distribution of electricity or gas within this Commonwealth.

Prior to November 30, 1931, the owner of all the common stock of the defendant was a New York corporation which also controlled the plaintiff. The contract on which the present action is based was made and work under it completed during that period. The cause of action arose from dealings entirely outside Massachusetts. On November 30, 1931, the common stock of the defendant was purchased by the New England Power Association, a Massachusetts voluntary association with its offices in Boston. It is hereafter called the association. A new president, treasurer and directors of the defendant were elected, though the general manager and assistant treasurer, who were the executive officers in Vermont, continued in office. Six of the directors reside in Vermont and the other five in Massachusetts, where they are also officers or employees of the New England Power Engineering & Service Corporation, hereafter called the service corporation, a subsidiary of the association, wholly owned by it, and employing a large group of highly trained and skilled engineers and accountants and similar experts. The association was formed for the purpose of providing technical skill and service to about sixty operating companies controlled by the association. The service corporation has its place of business in Boston in the same building with the association. There were located the offices of the defendant's president, F. J. Dunn, and its treasurer, two vice-presidents, an assistant treasurer and the secretary, all of whom resided in Massachusetts. A comprehensive contract was made by which the service corporation supplied the defendant with executive and detailed administrative services covering its accounting, purchasing, station operation, power sales, engineering and construction. It was dated in December, 1932, and was to be operative beginning with January 1, 1933, and to continue through December 31, 1934. It was the practice for the service corporation to have at hand data as to the defendant's operations, supplies, and administrative and financial problems. As a result many if not all of the major problems

arising with respect to the defendant's business were referred by the Vermont executive officers to Boston for consideration and decision by the officers there. Other matters, more particularly with reference to large loans or permanent financing, originated with or were handled chiefly by the Boston officers of the defendant with the advice and assistance of persons connected with the service corporation. Two bank accounts were maintained in Boston, and half the meetings of the directors were held there. Important contracts, including notes binding the defendant, were executed by its officers in Boston. A large volume of correspondence was sent and received in the defendant's name over the Boston address of the service corporation. The defendant rents no office in Boston, and its name does not appear on any Boston office door or in the Boston directory or telephone book. The defendant's transfer agent is a Boston bank. It was part of the contract of the service corporation to furnish a suitable room in Boston in which could be held meetings of the stockholders and directors and committees of stockholders or directors of the defendant. Many of the valuable documents of the defendant were regularly kept in Boston. Among the matters constantly managed at Boston by the Boston officers of the defendant were the collection of debts and disposition of questionable bills, affairs involving the Vermont public service commission, accounting and bookkeeping, and methods of making up monthly reports. Financial information as to the defendant was given out exclusively by the Massachusetts officers of the defendant acting at Boston. Insurance and tax matters were regularly managed and adjusted in the same way. It is not necessary to recite in further detail the nature and extent of business of the defendant transacted at Boston.

The relevant statutes are G. L. (Ter. Ed.) c. 223, §§ 37, 38. The latter section, so far as material, provides that, "In an action against a foreign corporation, except an insurance company, which has a usual place of business in the commonwealth, or, with or without such usual place of business, is engaged in or soliciting business in the com-

monwealth, permanently or temporarily, service may be made in accordance with the provisions of the preceding section relative to service on domestic corporations in general . . . ." It is provided by § 37 that, in an action against a domestic corporation, with exceptions not here material, service may be made "upon the president . . . or other officer in charge of its business."

The trial judge found that the defendant was engaged in business in this Commonwealth at the time when service was made of the writ in the present action upon its president, and that its president was then and there the officer in charge of its business. That conclusion seems to us necessarily to follow from the facts already narrated. Important and essential corporate functions of the defendant centered in Boston, although its physical operations took place in Vermont. The activities in Boston of its president, treasurer and other officers constituted business of the defendant in Boston.

This point seems to us to be amply covered by authority. The business activities of the defendant within the Commonwealth were greatly in excess of those of the defendant in *Reynolds* v. *Missouri, Kansas & Texas Railway*, 224 Mass. 379, affirmed in *Missouri, Kansas & Texas Railway* v. *Reynolds*, 255 U. S. 565. *Plibrico Jointless Firebrick Co.* v. *Waltham Bleachery & Dye Works*, 274 Mass. 281, 286. *Browning-Drake Corp.* v. *AmerTran . Sales Co.* 274 Mass. 545, 548. *St. Louis Southwestern Railway* v. *Alexander*, 227 U. S. 218, 228. *Washington-Virginia Railway* v. *Real Estate Trust Co.* 238 U. S. 185. See also *Marconi Wireless Telegraph Co.* v. *Commonwealth*, 218 Mass. 558, 576–579, affirmed *sub nomine Cheney Brothers Co.* v. *Massachusetts*, 246 U. S. 147, 155–156, and *Atlantic Lumber Co.* v. *Commissioner of Corporations & Taxation*, 292 Mass. 51.

The business of the defendant in Boston was not conducted exclusively through the service corporation as an independent agent. Dominant executive officers of the defendant were resident within the Commonwealth and acting here continuously in its behalf. Cases relied upon by the defendant like *Bank of America* v. *Whitney Central*

*National Bank*, 261 U. S. 171, and *Cannon Manuf. Co.* v. *Cudahy Packing Co.* 267 U. S. 333, are distinguishable in the facts from the case at bar. The defendant, because doing business in this Commonwealth, was subject to service here in conformity to the general rule formulated in *People's Tobacco Co. Ltd.* v. *American Tobacco Co.* 246 U. S. 79, 87, and quoted with approval in *Consolidated Textile Corp.* v. *Gregory*, 289 U. S. 85, 88, in these words: "The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the State or district where service is attempted."

The defendant contends that, because the cause of action arose outside this Commonwealth and was not connected with business transacted here, our courts are without jurisdiction. The statute as to service upon foreign corporations, G. L. (Ter. Ed.) c. 223, §§ 37, 38, already quoted, is unambiguous in terms. It is broad enough to include the case at bar. It does not restrict service on resident agents of foreign corporations to causes of action arising within the Commonwealth. In this respect it is in marked contrast to G. L. (Ter. Ed.) c. 90, § 3A, and c. 181, § 3A, where service is restricted to causes of action arising within the Commonwealth. The relevant sections of said c. 223 apply more generally to all transitory causes of action against foreign corporations engaged in business in Massachusetts.

This contention of the defendant hardly seems to be an open one in this jurisdiction. In *Reynolds* v. *Missouri, Kansas & Texas Railway*, 224 Mass. 379, the question decided was whether the defendant, a foreign railroad corporation not maintaining any lines in this Commonwealth, was doing business here. It was held that it was doing business here so as to be liable to service of process. The point whether that cause of action was one which could be maintained here because not related to the business

transacted here, was expressly raised when the case came a second time before this court in 228 Mass. 584. That cause of action was by the holder against the maker of promissory notes, executed and negotiated outside this Commonwealth and having no relation to business done in the Commonwealth. The defendant there relied upon *Old Wayne Mutual Life Association* v. *McDonough*, 204 U. S. 8, and *Simon* v. *Southern Railway*, 236 U. S. 115. That point was decided against the defendant. It was held that, when the defendant was engaged in business in Massachusetts and had subjected itself to the jurisdiction of our courts by the voluntary appointment of an agent representing it generally, and service of process upon it was adequate, the jurisdiction of the court was not limited to causes of action arising in this Commonwealth. It was after both of these decisions had been rendered that the case was taken to the Supreme Court of the United States and there affirmed in a *per curiam* opinion, 255 U. S. 565. So far as we are aware, there is no intimation in subsequent decisions of the Supreme Court of the United States that the opinion in 255 U. S. 565 has been overruled or shaken. It was cited with apparent approval in *Davis* v. *Farmers Co-operative Equity Co.* 262 U. S. 312, 317.

The defendant relies especially upon *Louisville & Nashville Railroad* v. *Chatters*, 279 U. S. 320, where, in considering a State statute permitting service upon a foreign corporation which had not been construed by any final decision of the State court, it was interpreted as subject to an implication "that the liability to suit does not extend to causes of action which have nothing to do with any act of the corporation within the state." Especially may this be true of cases, unlike the present one, where a statute has imposed upon a nonresident defendant having no local agents an implied consent to service upon a public official. See *Old Wayne Mutual Life Association* v. *McDonough*, 204 U. S. 8, and *Simon* v. *Southern Railway*, 236 U. S. 115. The foundation of such service is the implied consent of the defendant imposed by statute which will be narrowly con-

strued.  Compare *Robert Mitchell Furniture Co.* v. *Selden Breck Construction Co.* 257 U. S. 213; *Missouri Pacific Railroad* v. *Clarendon Boat Oar Co. Inc.* 257 U. S. 533.  No such question is presented in the case at bar.  The governing statute is not ambiguous.  It is not restricted.  It is comprehensive.  Service was in fact made upon the chief executive officer of the defendant in active charge of its affairs in this Commonwealth.  The decision in *Reynolds* v. *Missouri, Kansas & Texas Railway,* 224 Mass. 379, *S. C.* 228 Mass. 584, affirmed in 255 U. S. 565, is supported by authoritative decisions in other jurisdictions.  We think that the weight of authority holds that, except perhaps in cases of substituted service upon some public official, a State statute does not deny due process of law when it authorizes service of process on local agents of foreign corporations in causes of action arising outside the jurisdiction.  *Barrow Steamship Co.* v. *Kane,* 170 U. S. 100.  *Bagdon* v. *Philadelphia & Reading Coal & Iron Co.* 217 N. Y. 432.  *Tauza* v. *Susquehanna Coal Co.* 220 N. Y. 259.  *El Paso & Southwestern Co.* v. *Chisholm,* 180 S. W. 156.  *Logan* v. *Bank of Scotland* [1904] 2 K. B. 495, 499.

The defendant urges that the statute as thus construed unduly burdens its interstate commerce.  The finding of the trial judge that the interstate commerce business of the defendant, through the maintenance of a transmission line to supply electricity to a small area in New Hampshire, would not be unduly and unreasonably burdened by the maintenance and prosecution of this action, seems to us to be right.  The main business ,of the defendant is transacted in some sixty cities and towns in Vermont.  Its business in this Commonwealth is substantial and continuous.  The case at bar is quite distinguishable from *Davis* v. *Farmers Co-operative Equity Co.* 262 U. S. 312.  The nature of its interstate business and of its business in this Commonwealth forbids the conclusion as matter of law that the former will be unduly burdened by the present action.  The jurisdiction of the court is not affected on this ground.

The trial judge found and ruled that justice can be done conveniently and suitably between the parties in this action and that a trial in Massachusetts of the issues raised will not be attended by such difficulties, or be so burdensome to the court or to the defendant, that jurisdiction should be declined in the exercise of sound judicial discretion. The subsidiary facts upon which that finding and ruling rest are in substance these: It appeared that, in respect to the subject matter of this action, the defendant proposes to contest its liability for the services and materials in issue because not authorized by the defendant, and also because in substantial part the work done for the defendant was not needed and not properly designed and constructed, and further because the charges for services and materials are unreasonable and excessive. The materials supplied to the defendant which are involved in this action include large amounts of fabricated steel and electric and transmission apparatus and equipment situated at various locations in Vermont and its quality, condition, nature and amount may be in issue at the trial. So far as such defence may require the testimony of its employees or others familiar with the performance and progress of the work, such witnesses are in Vermont and not in Massachusetts. If a view becomes expedient and trial is before a jury, such a view by a jury outside the Commonwealth, even if lawful, cannot be arranged with due regard to the proper administration of justice. So far as the plaintiff is concerned, many of its witnesses must come from in and about New York City, and it is no more inconvenient for them to come to Boston than to go to Montpelier or some other place in Vermont which might have jurisdiction of the cause of action. The financial ability of the defendant to respond to a judgment if obtained is not questioned. The inconvenience to the plaintiff in trying the case in Vermont is not greater than trying in Massachusetts. The ruling of the trial judge not to decline jurisdiction on the doctrine of *forum non conveniens,* or kindred grounds, was right. It was in conformity to the principles stated in

*Universal Adjustment Corp.* v. *Midland Bank Ltd. of London,* 281 Mass. 303, 312–315, where the authorities were reviewed and the subject was discussed at large.

No error is disclosed on the record. The order overruling the answer in abatement is affirmed. The defendant's exceptions are overruled.

*So ordered.*